UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____X

UNITED STATES OF AMERICA,


       -against-                       Crim. No. S5 07-CR-971 (RPP)

                                              **NOTICE OF MOTION**

ISHMAEL HOUGHTON,
_____X

PLEASE TAKE NOTICE, that upon the Memorandum of Law annexed hereto, the points and authorities contained herein, the affidavit of the defendant, and the proceedings had heretofore, the defendant ISHMAEL HOUGHTON, by his attorney, James Kousouros, will move this court, before the Honorable Robert P. Patterson, Jr., United States District Judge, at the United States District Courthouse, 500 Pearl Street, New York, New York on the 18th day of June, 2008 at 9:30 A.M. or at such time as counsel may be heard, for the following relief:

1.    An Order, suppressing all post-arrest statements made on October 29, 2007 as the tainted fruit of the unlawful custodial interrogation of Ishmael Houghton, or in the alternative directing that a pre-trial evidentiary hearing be conducted to determine the admissibility of said statements;

2.    An Order, suppressing all items seized and statements made by Mr. Houghton in California on August, 2007 as the search which precipitated the seizure and statements was in derogation of Mr. Houghton's Constitutional Rights, or in the

alternative directing that a pre-trial evidentiary hearing be conducted to determine the admissibility of said property.

3.    An Order compelling the government to reveal any evidence it intends to introduce at trial, pursuant to Rule 404(b) of the Federal Rules of Evidence;

4.    An Order directing the pre-trial disclosure of all exculpatory and impeachment material, including but not limited to the following:

a.    Any and all information and/or material which tends to exonerate the accused, ISHMAEL HOUGHTON, or which tends to show that he did not knowingly commit any offenses alleged in the indictment.

b.    Any and all evidence which tends to impeach the credibility of any prospective Government witness, including but not limited to:

(1)    Any and all records or information revealing prior criminal convictions or guilty verdicts or juvenile adjudications, including but not limited to relevant "rap sheets" or records of departmental infractions or sustained acts of misconduct of each witness the prosecutor intends to call at trial;

(2)    Any and all records and information revealing prior or subsequent misconduct, unethical conduct, criminal acts or bad acts of any witness the prosecutor intends to call at trial;

(3)    Any and all allegations of prior or subsequent misconduct, unethical conduct, criminal acts or bad acts of any witness the prosecutor intends to call at trial of which the prosecutor knows or through the exercise of reasonable diligence should have reason to know;

(4)    Any and all consideration or promises of consideration

2

given during the course of the investigation and preparation of this matter by any law enforcement officials, including prosecutors or agents, police or informers, to or on behalf of any witness, or on behalf of a relative of any such witness the Government intends to call at trial, or any such consideration or promises expected or hoped for by any such witness, or relative of any witness, at any future time. Such "consideration" refers to anything which arguably could be of value or use to a witness, or relative of the witness, including but not limited to: formal or informal, direct or indirect, leniency; favorable treatment or recommendations or other assistance with respect to any pending or potential criminal, parole, probation, pardon, clemency, civil, administrative, regulatory, disciplinary or other matter involving the state or federal government or agency thereof, any association (including legal association), any other authority, or other parties; civil, criminal or tax immunity grants; relief from forfeiture; payments of money, rewards or fees, witness fees and special witness fees; provisions of food, clothing, transportation, legal services, alcohol or drug related rehabilitation services or other benefits; placement in a "witness protection" program, informer status of the witness; letters to anyone advising the recipient of the witness's or the relative's cooperation; recommendations concerning licensing, certification or registration (including liquor licenses and the license to practice law); recommendations concerning federal aid or benefits; promises to take affirmative action to help the status of the witness, or relative of the witness, in a profession, business, or employment, or promises not to jeopardize such status; aid or efforts in securing or maintaining the business or employment of a witness, or a relative of the witness; and anything else which arguably could reveal any interest, motive or bias of the witness in favor of the prosecution or against Ishmael Houghton or which could act as an inducement to testify or to color his testimony;

(5)     Any and all statements formal and informal, oral or written by the prosecution, it's agents and representatives to any person (including counsel for such persons) whom the prosecution intends to call as a witness at trial pertaining in any way to the possible or likely course or outcome of any Government action state or federal, civil or criminal or licensing (including liquor licenses and the license to practice law) matters against the witness, or anyone related by blood or marriage to the witness;

(6)     Any statements read or made by the Government to the departments of pre-trial services or probation in connection with the prosecution or conviction of any prosecution witness or potential prosecution witness;

(7)     Any and all threats, express or implied, direct or indirect, or other coercion directed against any witness, or against a relative of such witness, whom the prosecutor intends to call at trial; criminal prosecutions, investigations, or potential prosecutions pending or which could be brought against any such witness, or relative of such witness; any probationary, parole, deferred prosecution or custodial status of any such witness, or relative of such witness; and any civil, tax court, court of claims, administrative, or other pending or potential legal disputes or transactions involving any such witness, or relative of such witness, and the state of federal government, any agency thereof or any regulatory body or association or over which the state or federal government, agency, body or association has real, apparent or perceived influence;

(8)     A list of any and all requests, demands, or complaints made of the Government by any witness which arguably could be developed on cross-examination to demonstrate any hope or expectation on the part of the witness for favorable governmental action in his behalf

4

or on behalf of a relative to such witness (regardless of whether or not the Government has agreed to provide any favorable action);

(9)     With respect to each witness the Government intends to call at trial, or any member of the immediate family of any such witness, disclose copies of all indictments, complaints or informations filed against such person by the federal, or any state or local government, all administrative, disciplinary, regulatory, licensing, tax, customs, or immigration proceedings brought by the federal, or any state or local government, or by any regulatory body or association, and state what counts or actions have been the subject of guilty pleas, convictions, consent decrees, dismissals, or understandings to dismiss at a future date; the date or dates on which pleas of guilty, if any, took place; and the names of the judges or hearing officers before whom such pleas were taken.  If the Government does not have copies of all indictments, complaints, or proceedings, state the dates and places of arrests, hearings, indictments, and informations, the charges brought, and the disposition of those charges or matters so far as it is known to the Government;

(10)    With respect to each witness the Government intends to call at trial, or any member of the immediate family of any such witness, a written summary of all charges or proceedings which could be brought by the federal, or any state or local government, but which have not or will not or which the witness believes have not or will not be brought, because the witness is cooperating with or has cooperated with the Government, or for any reason.  Include copies of all memoranda of understanding between the Government and its witnesses, whether by way of a letter to the attorney for a witness or otherwise;

(11)    Any material not otherwise listed which reflects or evidences the motivation of any witness either to

cooperate with the Government or any bias or hostility against Ishmael Houghton; the existence and identification of each occasion on which a witness had testified before any court, grand jury, administrative, regulatory, disciplinary body or other association, or otherwise officially narrated in the investigation of this case, the indictment of the facts of this case, and any testimony, statements or documents given by the witness regarding same;

(12)    All judicial proceedings in any criminal cases, and all regulatory, association or disciplinary proceedings (including licensing for liquor sales or law practice) of which the Government knows or through the exercise of reasonable diligence should have reason to know in which testimony by any person has been given, regarding the misconduct, criminal acts or bad acts of any witness the Government intends to call at the trial of this action;

(13)    Any statements or documents, including but not limited to, judicial, regulatory, administrative, disciplinary, association or grand jury testimony, or federal, state or local tax returns, made or executed by any potential prosecution witness in connection with this action or related to this action, which he prosecution knows or through the exercise of reasonable diligence should have reason to know, is false;

(14)    Copies of all medical and psychiatric reports known to the prosecutor or which can reasonably be known to the prosecutor concerning any witness the prosecutor intends to call at trial which may arguably affect the witness's credibility or his ability to perceive, state or recall events;

(15)    All documents and other evidence regarding drug or alcohol usage and/or dependency by any individual the Government intends to call as witness at trial,

including but not limited to records relating to treatment of such individual in any federal, state, city or military drug or detoxification program;

(16) Any written or oral statements, whether or not reduced to writing, made by any potential prosecution witness which in any way contradicts or is inconsistent with or different from other oral or written statements he has made;

(17) Any requests prepared by the prosecution for permission to grant formal or informal immunity or leniency for any witness, whether or not such request was granted;

(18) Copies of any and all records of law enforcement agencies reflecting intra- departmental disciplinary action taken against any law enforcement official or agent who will testify at trial;

(19) Copies of any and all records of any law enforcement or other governmental agency reflecting any commendations, awards, or recognition or any kind, or requests for any commendations, awards or recognition of any kind made to or by any Government agent or law enforcement officer for any work, action or conduct in connection with the investigation and prosecution of this case or any related case; and

(20) The same records and information requested in items "(1)" through "(19) " with respect to each ***non-witness declarant*** whose statements will be offered in evidence at trial.

c. The name and address of and written or oral statements made by any person with knowledge and information concerning the events charged in the Indictment and whose version of the same events is contrary to, or nonsupportive of, the accusations set forth in the Indictment.

    d.    The name and address of and any written or oral statement made by any person the Government reasonably believes has information helpful to the preparation of the defense and

    e.    The name and address of any written or oral statement made by any witness to any offense or offenses charged in the Indictment whom the Government does not intend to call as a witness in this case.

    5.    An Order directing discovery and inspection pursuant to Rule 16(c)(1)(A) and Rule 16(d)(1) of the Federal Rules of Criminal Procedure, including but not limited to the following:

    a.    the substance of any oral statement, regardless of whether or not the Government intends to offer it in evidence at the trial-in-chief, which was made by Ishmael Houghton either before or after his arrest in response to interrogation by any person then known to Ishmael Houghton to be a Government agent or law enforcement official;

    b.    any written or recorded statement and/or the substance of any oral statement of any co-defendant which communicates, contains, recites, or refers to statements made to the above-named declarant by Ishmael Houghton, to be offered by the Government at trial pursuant to Rule 801(d)(2)(E) of the Federal Rules of Evidence.

    c.    any statement of Ishmael Houghton which the Government may offer in evidence at the trial of the Defendant pursuant to Rule 801(d)(2)(A), (B), (C), and (D) of the Federal Rules of Evidence;

    d.    any statement of Ishmael Houghton made to a Government agent, regardless of whether the agent's status is or was known to Mr. Houghton at the time, if the Government intends to offer the statement in evidence at trial;

    e.    Any and all diagrams, telephone call records, charts or reports which the Government intends to use as evidence in its case-in-chief at trial;

    f.    Each and every application for search or arrest warrants, supporting affidavits, and search and arrest warrants, inventory returns on all searches obtained by federal, state or local officers during the

8

investigation and preparation of the above captioned matter;

g.  Any and all reports, memoranda or documents relating to the monitoring or opening of mails directed to Ishmael Houghton or addressed to any location or residence occupied by Ishmael Houghton;

h.  Any and all documents or papers which indicate rental, purchase, sale, occupancy, or ownership of any vehicle, residence, commercial or real or personal property which is material to the above-captioned matter or any defenses thereto;

i.  Any and all photographs taken of Ishmael Houghton either before or after his arrest;

j.  Any and all items seized from the person of Ishmael Houghton, from any vehicle, real or personal property, related to the above captioned matter;[1]

k.  Any and all reports and memoranda reflecting the booking of Ishmael Houghton on or after his arrest, either by Federal, State or Local Authorities;

l.  Any and all tape recordings or statements made by witnesses to the alleged crimes or by witnesses from whom the Government intends elicit testimony at trial;

m.  Any and all other materials, books, papers, documents, photographs, tangible objects, lists and other evidence which the Government intends to offer in evidence at its case-in-chief at trial, either directly or indirectly.

o.  Any logs, diaries, charts, maps, or other papers or documents seized from any agency or department of the United States which was initiated in connection with this case;

p.  Any and all documents or papers which related to the financing of any vehicle, residence, or real or personal property, which is material to this case;

---

[1]This request includes all property seized in connection with this investigation or any related investigation for which the government will seek to utilize the fruits thereof at the trial of this matter.  As discussed *infra*. at Point Two, a search and seizure was conducted as to Ishmael Houghton in California in August, 2007.  This request includes any and all evidence related thereto which the government seeks to utilize in this prosecution.

q.      That the Court, pursuant to Rule 16(d)(1) of the Federal Rules of Criminal Procedure, exercise its discretion and order the Government to provide Ishmael Houghton with a full and complete witness list, reflecting the names and addresses of any and all witnesses the Government intends to call at trial.

r.      That the Court order the Government to grant access to counsel for Ishmael Houghton to any and all witnesses whom the Government intends to call at trial who are within the custody and control of the Government or who are protected by, controlled by, or are in the custody and control of the Government , at a time and place to be agreed upon by counsel so that counsel for defendant may request, in person, an interview with the witness, or, in the alternative, if the Government denies such control or custody of such a witness, the identity of any attorneys for, or the whereabouts of, any such witness so that counsel for defendant may attempt an interview;

t.      That the Court order the Government to disclose to Ishmael Houghton the following information concerning each witness whom the Government intends to call during the trial of this case:

(1)      All criminal records and any list or summary reflecting the criminal record, including the FBI arrest and conviction records;

(2)      Any and all records and information revealing prior misconduct, bad acts and any other fact which might tend to impeach or otherwise discredit the credibility of such witness;

(3)      The existence and substance, and manner of execution or fulfillment, or any promise, agreement and understanding between the Government and any such witness which might in any way constitute a reward or benefit of any kind to said witness or any member of his or her family, or might be believed by said witness to be such reward or benefit;

(4)      The existence, amounts and terms of the financial or property reward or benefit offered or to be offered to such witness;

(5)      Any and all threats, express or implied made to or against said witness, or to any others in whose welfare said witness might be interested.

10

u.     That the Court order the Government to disclose to Ishmael Houghton
       whether or not the Government intends to introduce at trial any prior or
       subsequent "bad acts" or prior or subsequent criminal conduct against
       Ishmael Houghton, and if so, the name and addresses of each witness who
       will testify regarding this activity or conduct, a description of what the
       Government intends to introduce into evidence, and the date and place of
       the activity or conduct in question.

v.     Any police reports, dismissals, offense or incident reports, complaints,
       conviction record or otherwise aborted criminal cases against any
       Government witness.

w.     A list of any and all persons and any and all documents subpoenaed to
       appear before the Federal Grand Jury in connection with this case.

x.     Whether or not the Government, its agents and representatives in the
       investigation and prosecution of this case, utilized wiretaps, telephonic or
       electronic interceptions or similar methods of interception of
       conversations or communications, whether or not authorized pursuant to
       law.

y.     Copies of all recordings, transcripts of proceedings, notes of conversations
       or other evidence of all wiretaps, telephonic or electronic interceptions or
       similar methods of interception of conversations or communications in the
       investigation or prosecution of this case, whether or not authorized
       pursuant to law, and whether relative to Ishmael Houghton's
       conversations or communications or relative to conversations or other in
       the investigation or prosecution of this case.

z.     An accurate certification of any and all promises made to any non-
       employee witness the Government intends to call at trial; and

6.     The Government should be directed to provide notice of any expert
testimony that it may week to elicit at trial;

7.     Pursuant to the Due Process Clause of the Fifth Amendment directing the
government to provide a witness list;

11

8.      Permitting the defendant to join in the motions of his co-defendants where applicable and to file additional motions which may arise from the requests made herein;

9.      For an order severing the trial of this defendant from that of the other defendants, or in the alternative reserving decision on this motion until the trial posture of the remaining defendants and the evidence to be admitted against the remaining co-defendants is decided;

10.     Preserving defendant's rights to file motions *in limine* prior to trial concerning the admissibility of evidence and testimony proffered by the government based upon the resolution of the instant motions as well as concerning other independent issues of admissibility; and

11.     Any such further relief as to the court may seem proper in the premises.


                                        Respectfully submitted,

                                        /s/
                                        JAMES KOUSOUROS
                                        Attorney for ISHMAEL HOUGHTON
                                        80-02 Kew Gardens Road
                                        Suite 1030
                                        Kew Gardens, NY 11415
                                        (718) 575-5450

cc:     John Zack
        Assistant United States Attorney

        Ishmael Haughton

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____X

UNITED STATES OF AMERICA,


          -against-                           Crim. No. S5 07-CR-971 (RPP)


ISHMAEL HOUGHTON,
_____X


**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTIONS**

       The accused herein, ISHMAEL HOUGHTON, by his attorney, James Kousouros hereby submits the following Memorandum of Law in support of the within motions for:

       1.     An Order, suppressing all post-arrest statements made on October 29, 2007, or in the alternative directing that a pre-trial evidentiary hearing be conducted to determine the admissibility of said statements;

       2.     An Order, suppressing all items seized and alleged statements made in California in August, 2007 as the warrantless search and seizure was illegal;

       3.     An Order compelling the Government to reveal any evidence it intends to introduce at trial, pursuant to Rule 404(b) of the Federal Rules of Evidence;

       4.     An Order directing the pre-trial disclosure of all exculpatory and impeachment material;

5.      An Order directing discovery and inspection pursuant to Rule 16(c)(1)(A)(c) and Rule 16(d)(1) of the Federal Rules of Criminal Procedure;

6.      An Order directing the Government to provide notice of any expert testimony that it may week to elicit at trial;

7.      An Order pursuant to the Due Process Clause of the Fifth Amendment directing the government to provide a witness list;

8.      An Order permitting the defendant to join in the motions of his co-defendants where applicable and to file additional motions which may arise from the requests made herein;

9.      An order severing the trial of this defendant from that of the other defendants;

10.     An Order preserving defendant's rights to file motions *in limine* prior to trial concerning the admissibility of evidence and testimony proffered by the government based upon the resolution of the instant motions as well as concerning other independent issues of admissibility; and

11.     Any such other and further relief as this Court may deem necessary and proper in the premises.

Dated:      June 16, 2008
               Kew Gardens, New York       Respectfully submitted,


/s/
JAMES KOUSOUROS, ESQ.
80-02 Kew Gardens Road
Suite 1030
Kew Gardens, NY 11415
718-575-5450

15

## STATEMENT OF FACTS

On October 29, 2007 Ishmael Houghton was arrested pursuant to an arrest warrant issued by the Southern District of New York. Mr. Houghton was thereafter interviewed by the federal agents concerning his alleged involvement in marijuana trafficking. It is alleged that the defendant made statements admitting his participation in marijuana trafficking with other individuals. It is further alleged that Mr. Houghton gave agents his consent to search through his cellular telephones which were seized from him at the time of his arrest.

Mr. Houghton was later indicted along with codefendants Hughie Gray, Sharon Hinds, Lloyd Reid, Dujon Reid, Noeila Munoz, Jaime Estrada Sandoval, Marco Miranda, Rueben Miranda, Peter Brown, Baldwin Rose and Ray Marshall Reid for the crime of conspiracy to distribute 1000 kilograms of marijuana in violation of Sections 812, 841(a)(1) and 841 (b)(1)(A) of Title 21, United States Code (Attached hereto and labeled **Exhibit A** is a copy of the indictment).

The matter is pending before the Honorable Robert Paterson, United States District Court Judge for the Southern District of New York.

## POINT ONE

## THE STATEMENTS ALLEGEDLY MADE BY ISHMAEL HOUGHTON MUST BE SUPPRESSED

In <u>Miranda v. Arizona</u>, 384 U.S. 436, 86 S.Ct. 1602 (1966, the Supreme Court held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." <u>Id.</u> at 444.  In explaining the dual predicates which necessitate the administration of the now-famous Miranda warnings - - custody and interrogation - - the Supreme Court summarized: "[w]e hold that when an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way, and is subjected to questioning, the privilege against self-incrimination is jeopardized.    Procedural safeguards must be employed to protect the privilege." <u>Id.</u> at 478.  The mandate of <u>Miranda</u> has long been recognized as a bright-line rule, which, when violated, strictly prevents the admission of defendant's resulting unwarned or unwaived statements. <u>See also</u>, <u>California v. Beheler</u>, 463 U.S. 1121, 103 S.Ct. 3517 (1983); <u>United States v. Mathis</u>, 391 U.S. 6, 88 S.Ct. 1503 (1968).

In <u>Dickerson v. United States</u>, 530 U.S. 428, 120 S.Ct. 2326 (2000), the Supreme Court not only reaffirmed that the Miranda warnings were "'not simply a preliminary ritual to existing methods of interrogation'" but instead revitalized them as "'rights grounded in a specific requirement of the United States Constitution.'" 530 U.S. at 440

n.4, See also, Withrow v. Williams, 507 U.S. 680, 691, 113 S.Ct. 1745 (1993). Thus, the Court announced a constitutional rule through its interpretation of the Fifth Amendment's guarantee against self-incrimination in Miranda that could not be overruled or superceded by Congress.[2]

While no talismanic incantation of the warnings is required, the Miranda opinion itself made it clear that in the absence of a "fully effective equivalent," no custodial interrogative statements made by a defendant are admissible. 384 U.S. at 476.

If an interrogation continues without the presence of an attorney after the Miranda warnings are given, and a statement is taken, "a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel." Id. at 474-75. It is the government's burden to prove that "the waiver must have been made with a full awareness, both of the nature of the right to be abandoned and the consequences of the decision to abandon it." Moran v. Burbine, 475 U.S. 412, 421, 106 S.Ct. 1135 (1986). Furthermore, the government bears the burden of establishing that "the relinquishment of the right must have been voluntary in the sense that it was the

---

[2]The Dickerson opinion addressed Congress' attempt two years after the Miranda opinion to overrule Miranda by the enactment of 18 U.S.C. §3501(a), and instructed trial courts to consider a nonexclusive list of factors relevant to the circumstances of a confession in determining the admissibility of a confession. Notwithstanding Congress' retention of the ultimate authority to modify or set aside any judicially created rules of evidence and procedures that are not required by Congress, the Court held that "Congress may not legislatively supercede our decisions interpreting and applying the Constitution." 120 S.Ct. at 2232 (*citing* City of Boerne v. Flores, 521 U.S. 507, 517-521 (1997)). The Court concluded that the protections embodied in the Miranda warnings were "constitutionally required" because they protected the privilege against self-incrimination. Id. at 2332, 2334. Accordingly, it rejected the assertion that Congress overruled Miranda through its statutory enactment. See id. at 2336.

product of a free and deliberate choice rather than intimidation, coercion or deception. In determining whether the waiver was intelligent, knowing and voluntary, the trial courts must look to the "totality of the circumstances surrounding the interrogation." Id., See also; Tague v. Louisiana, 444 U.S. 469, 471, 100 S.Ct. 652 (1980)).

It is alleged by the government that upon his arrest by federal agents, Mr. Houghton  was "reminded" of his Miranda warnings and that Mr. Houghton understood them.  This occurred over two hours after the initial arrest.  It is further alleged that Mr. Houghton was then questioned and made several inculpatory statements to the agents essentially admitting to his participation in the charged conspiracy and specifically detailing certain acts he committed in furtherance thereof. He was brought to the New York Field Division for arrest processing and after he was processed, the agents played a tape recorded conversation recorded during the investigation and informed Mr. Houghton that there were hundreds of conversations and that they were aware of his conduct and that of others with whom he was associated.  He was advised that he should cooperate with the authorities. Having heard the voice on the recording, Mr. Houghton began answering the questions put to him.  It is submitted that Mr. Houghton was not read his Miranda rights until well into the interrogation and after the incriminating statements were made.

It is respectfully submitted that the statements herein were not obtained lawfully and that a hearing should be conducted during which the legality and admissibility of

the statements can be determined.

It is further alleged that Mr. Houghton consented to the search of the cellular telephones seized at the time of his arrest.  Mr. Houghton denies having given any consent to search these items.  Absent this purported consent, the warrantless search of these items was not legally justified and the fruits thereof must be suppressed (Attached hereto and labeled **Exhibit B** is an affidavit from Mr. Houghton attesting to the facts in support of the motion herein).[3]

**POINT TWO**

**THE SEARCH WHICH PRECIPITATED THE SEIZURE OF ITEMS IN CALIFORNIA IN AUGUST, 2007 WAS WITHOUT LEGAL JUSTIFICATION AND THE FRUITS THEREOF MUST THEREFORE BE SUPPRESSED**

The Police Lacked Probable Cause or Reasonable Suspicion for the Seizure of Ishmael Houghton and all Consequent Evidence Must be Suppressed

Due to their inherent mobility and a diminished expectation of privacy in their contents, motor vehicles enjoy a somewhat unique status under the constitution and may be searched without a warrant in many situations.  However, as Justice Stewart noted some three decades ago, "[t}he word 'automobile' is not a talisman in whose presence the Fourth Amendment fades away and disappears."  Coolidge v. New Hampshire, 403 U.S. 443, 461-62, 91 S.Ct. 2022 (1971).  Searches of motor vehicles, like

---

[3]As the undersigned is not a notary public, we are awaiting a notarized affidavit from Mr. Houghton who is incarcerated at the MCC.  The signed and notarized affidavit will be submitted upon our receipt thereof.

all searches, must comply with constitutional standards.  Although a warrant may not be required under some circumstances, the so called "automobile exception" to the Fourth Amendment still mandates that probable cause must exist prior to the vehicle being searched.  See, Pennsylvania v. Labron, 518 U.S. 938, 940, 116 S.Ct. 2485 (1996) (where a car is readily mobile and probable cause exists to believe it may contain contraband, it may searched without a warrant); United States v. Ross, 456 U.S. 798, 807-08, 102 S.Ct. 2157 (1982); Carroll v. United States, 267 U.S. 132, 155-56, 45 S.Ct. 280 (1925).

A traffic stop must be justified by either probable cause or reasonable suspicion, based on specific and articulable facts, that one or more individuals was engaged in unlawful activity.  Terry v. Ohio, 392 U.S. 1, 21, 88 S.Ct. 1868 (1968); United States v. Scopo, 19 F.3d 777, 781 (2d Cir.), cert. denied, 513 U.S. 877, 115 S.Ct. 207 (1994).

Probable cause exists when the facts and circumstances within the officer's knowledge, and of which they have reasonably trustworthy information, are sufficient to warrant a man of reasonable caution to believe that the vehicle contains contraband or evidence of a crime. Brinegar v. United States, 338 U.S. 160, 175-76, 69 S.Ct. 1302 (1949); See also; Ross, 456 U.S. at 808 (the probable cause determination must be based on objective facts that would justify the issuance of a warrant).   While evidence sufficient to convict is not required, it is equally true that speculation, conjecture, suspicion, or even "strong reason to suspect" does not rise to the level of probable

cause.  Henry v. United States, 361 U.S. 98, 101, 80 S.Ct. 168 (1959). The existence of a reasonable suspicion depends upon the content of the information possessed by the officer and its degree of reliability. United States v. Bold, 19 F.3d 99, 102 (2d Cir. 1994); United States v. Walker, 7 F.3d 99, 102 (2d Cir. 1994); United States v. Walker, 7 F.3d 99, 102 (2d Cir. 1993), *cert. denied*, 498 U.S. 1095, 114 S.Ct. 1201 (1994).

The indictment herein alleges that on August 16, 2007, Mr. Houghton possessed marijuana samples and approximately $2000.00 in United States currency in the Los Angeles, California area (See, **Exhibit A**, page 4, ¶h).  The discovery heretofore provided by the government makes clear that this stop and seizure in California was a topic of the custodial interrogation after Mr. Houghton's arrest herein. Upon information and belief, this conduct refers to a vehicle stop in August, 2007 during which a vehicle driven by Mr. Houghton was stopped by the police in California.  Mr. Houghton was removed from the vehicle, he was questioned, and both the vehicle and his person were searched.  Said searches were conducted without a warrant, without the consent of the defendant and without legal justification. The government has not, to date provided any discovery relating to this search and seizure, however given the reference thereto in the indictment as an overt act committed by Mr. Houghton, the defense has a reasonable belief that the government may seek to introduce this evidence in the case at bar.  Accordingly we move to suppress this evidence or for an Order directing that a hearing be conducted to determine its admissibility.

It is respectfully submitted that the stop, search and questioning of Mr. Houghton in California was without legal basis. Mr. Houghton had not committed any traffic violations or violations of law to justify the stop of his vehicle. Mr. Houghton was stopped, forcibly removed from the vehicle and both the car and his person were searched. There can be no question that this conduct on the part of the police constituted a seizure. A seizure occurs when, under the circumstances surrounding the encounter between the police and the citizen, a reasonable person would have believed that he was not free to terminate the encounter Florida v. Bostick, 501 U.S. 429, 439, 111 S.Ct. 2382 (1981); United States v. Peterson, 100 F.3d 7, 10-11 (2d Cir. 1996). In assessing whether a seizure has occurred, a court should consider the conduct of the officers, whether those officers maneuvered to block egress, and the display of any weapons. United States v. Glover, 957 F.2d 1004, 1008 (2d Cir. 1992). The police in this case blocked his vehicle from progressing, ordered the occupants out of the vehicle and then arrested Mr. Houghton. From the moment that the stop was effectuated, there can be little question that a seizure of Mr. Houghton and the vehicle had been made. Certainly, under these circumstances a reasonable person would conclude that resistance of the encounter would have been at the peril of the detained citizen. In short then, this was a full-blown seizure from its inception, unsupported by anything beyond the seeming caprice of officers who were intent on stopping this vehicle and searching the occupants thereof.

The police confiscated a very small amount of marijuana and United States currency and he was arrested for the marijuana.  It is further alleged that Mr. Houghton was questioned concerning his purpose for being in California.   He was not administered his Miranda warnings prior to the questioning and it was clear that the questioning was designed to elicit incriminating information from him.

If, as here, the stop of the automobile was illegal, and Mr. Houghton's seizure unwarranted, evidence seized in a subsequent search must be excluded as the rancid fruit of that poisonous tree.  Wong Sun v. United States, 371 U.S. 471, 484-85, 83 S.Ct. 407 (1963); United States v. Scopo, 19 F.3d at 781.  This would, of course, include any physical evidence recovered as a result of that seizure.  Moreover, the taint of that unlawful seizure, in the absence of any demonstration of attenuation, would also extend to warrant preclusion of admissions or confessions, irrespective of any showing of the constitutional propriety of those statements. Dunaway v. New York, 442 U.S. 200, 99 S.Ct. 224 (1979).

Should the government seek to introduce the fruits of this stop and search, including any statements made by Mr. Houghton during said stop and search, we respectfully request a hearing to determine the admissibility of this evidence.

## POINT THREE

## THE COURT SHOULD COMPEL THE GOVERNMENT TO REVEAL ANY EVIDENCE IT INTENDS TO INTRODUCE AT TRIAL PURSUANT TO FED. R. EVID. 404(b)

Federal Rule of Evidence 440(b) requires:

> [u]pon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial, if the Court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

The defendant respectfully requests that the Government be compelled, within a reasonable time prior to trial, to provide the defense counsel with any prior or similar act evidence it intends to introduce at trial, pursuant to Fed. R. Evid. 404(b). Such notice should include the nature of this evidence, the pertinent witnesses, any supporting documentation, and the legal theory of admissibility to be relied upon by the Government. Such a procedure is necessary to enable the accused to file appropriate *motions in limine* and to allow this Court to make a considered pretrial determination of the admissibility of any such evidence proffered by the Government. Moreover, such pretrial notice would provide the defense an opportunity to challenge the evidence on its merits and/or discuss with the Government the possibility of stipulating to such evidence.

**POINT FOUR**

**THE GOVERNMENT SHOULD DISCLOSE ALL EXCULPATORY
AND IMPEACHMENT MATERIAL**

A prosecutor has a constitutional duty to disclose material, exculpatory evidence to the defense, regardless of whether defense counsel makes a specific request.  United States v. Bagley, 473 U.S. 667, 682 (1985); Brady v. Maryland, 373 U.S. 83, 87 (1963).  The duty extends not only to information relevant to guilt, but also to evidence that would tend to impeach the prosecution's witnessess. Bagley, 473 U.S. at 676-77 ("When the reliability of a given witness may well be determinative of guilt or innocence, non-disclosure of evidence affecting credibility falls within the general rule of Brady." (internal quotation marks and brackets omitted)); Giglio v. United States, 405 U.S. 150, 154 (1972).

A breach of that duty violates due process when: (1) the prosecution suppresses impeachment evidence that was actually or constructively in its possession, regardless of the good or bad faith of the prosecutor; and (2) the suppressed evidence was material. A defendant does not need to show that the evidence, if disclosed, would have resulted in his acquittal; rather, he needs to show only that the evidence "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." Kyles v. Whitley, 514 U.S. 419, 434-35 (1995); Bagley, 473 U.S. at 682 (Evidence is material is there is a "reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."

26

A "reasonable probability" is a probability "sufficient to undermine confidence in the outcome").

Impeachment evidence has been deemed to fall within the standard of materiality for <u>Brady</u> purposes. <u>United States v. Wong</u>, 78 F.3d 73, 79 (2d Cir. 1996) ("Evidence of impeachment is material . . . where the likely impact on the witness's credibility would have undermined a critical element of the prosecution's case." (internal quotation marks omitted)).

Even if the prosecutor is not directly aware of material, exculpatory evidence, a <u>Brady/Giglio</u> violation can still occur if the evidence was in the prosecutor's constructive possession. For example, in <u>Kyles v. Whitley</u>, *supra*, the Supreme Court held that state prosecutors have a duty to disclose impeachment evidence known to the police, even if the prosecutors themselves were not actually aware of the information. The Court stated:

> . . . the prosecution, which alone can know what is undisclosed, must be assigned the consequent responsibility to gauge the likely net effect of all such [undisclosed favorable] evidence and make disclosure when the point of "reasonable probability" is reached. This in turn means that the individual prosecutor has a duty to learn of any favorable evidence known to others acting on the government's behalf in the case, including the police.

<u>Id.</u> at 437 (emphasis added)

It is clear that the law in this Circuit is that such material must be provided to the defense "no later than the point at which a reasonable probability will exist that the

27

outcome would have been different if an earlier disclosure had been made." United States v. Coppa, 267 F.3d 132, 142 (2001). This, of course, begs the essential question, since "[t]he linking of the scope of the disclosure obligation with the remedy for its breach creates both a responsibility and a problem for the prosecutor." Id. As such, it would appear that disclosure of such information at the earliest feasible juncture relieves the prosecutor of having to predict both the outcome of the trial and the relative impact that late disclosure might have on that result. We therefore maintain that all exculpatory and impeachment material as detailed herein be disclosed forthwith.

## POINT FIVE

### THE GOVERNMENT SHOULD BE DIRECTED TO PROVIDE NOTICE OF ANY EXPERT TESTIMONY THAT IT MAY SEEK TO ELICIT AT TRIAL

To the extent that any expert is permitted to testify in this case, it is respectfully asserted that this Court should direct the government to disclose to defense counsel the name and address of each expert, a summary of his/her anticipated testimony, and the reports, studies or other data on which such expert testimony will rely. Timely disclosure of this information is needed to enable counsel to file a motion *in limine* prior to trial to properly restrict the scope and extent of the proposed testimony. Absent such disclosure, the witness will be free to say anything, claim the source is some confidential government document or witness, without

counsel effectively confronting this testimony.

To this end, the government is barred from using experts "solely to bolster the credibility of the government's fact witnesses by mirroring their version of events." United States v. Cruz, 981 F.2d 659, 664 (2d Cir. 1992). In particular, the Cruz court condemned the technique of having an expert state that a given set of facts is consistent with criminal behavior and then "arguing that the witnesses' version of events is consistent with an expert's description of patterns of criminal conduct." Id. Rather, the expert's testimony must deal with operations which "have esoteric aspects reasonably perceived as beyond the ken of the jury and that expert testimony cannot be used solely to bolster the credibility of the government's fact witnesses by mirroring their version of events." Id. *See also*, United States v. Castillo, 924 F.2d 1227, 1231 (2d Cir. 1991); United States v. Scop, 846 F.2d 135, 139-43 (2d cir. 1988).

Further, any expert called by the government should, pursuant to Fed.R.Evid., Rule 702, deal only with issues that are "beyond the knowledge or understanding of an average juror." Cruz, 981 F.2d at 662; United States v. Stevens, 935 F.2d 1360, 1400 (2d Cir. 1991) (expert testimony properly barred where it would have "pitched to the common sense of the jury"). It is patently improper for an expert witness to merely parrot the testimony of other witnesses with respect to information which is certainly not beyond the ken of the average juror. *See*, United States v. Long, 917 F.2d 691, 702 (2d Cir. 1990).

29

The United State Supreme Court, pursuant to the rule-making authority granted by 28 U.S.C. §2071, et seq., promulgated amendments to the Federal Rules of Criminal Procedure, effective December 31, 1993. One of the Rules which was amended by the Court was Rule 16(a)(1)(E). That rule provides:

(E)EXPERT WITNESSES. At the defendant's requests, the government shall disclose to the defendant a written summary of testimony the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case in chief at trial...The summary...shall describe the witnesses' opinions, the basis and the reasons for those opinions and the witnesses' qualifications.

The rule permits the opposing party to determine, prior to trial, whether the proposed witness meets the qualifications of an expert within the meaning of the Federal Rules of Evidence and provides the party with a summary of the expected testimony.  In light of Rules 705 and Rule 16, it is respectfully requested that the government be directed to provide the requested information to the defense.

## POINT SIX

### THE GOVERNMENT SHOULD BE COMPELLED TO PROVIDE A WITNESS LIST PRIOR TO TRIAL

The government should be directed to identify its prospective witnesses at a time which will enable the defense enough time to conduct a thorough investigation of these witnesses and prepare cross-examination.  It is respectfully submitted that, in the

absence of any showing of a risk to any witness from disclosure, the defendant's request is not unreasonable.  Nor will the production of a witness list be, in any way, prejudicial to the prosecution.  The Court's observation in <u>United States v. Cannone</u>, 528 F.2d 296, 301 (2d Cir. 1975), of the reasons for requiring disclosure of a witness list are clearly applicable here:

> The most potent argument for compulsory disclosure of the identity of the prosecution's witnesses is that, without the benefit of such disclosure, the defense may be substantially hampered in its preparation for trial.  At a minimum, pretrial ignorance of the effectiveness of the defense's objections and cross-examination.  Although continuances, which tend to mitigate the detrimental effects of unpreparedness, are sometimes obtainable, not only are they merely a partial solution to the problem of unpreparedness but, in addition, their prolongation of trials is of course costly to both the government and the defendant.

<u>Id.</u> at 301.  *See also*, <u>United States v. Mosely</u>, 450 F.2d (506) (5th Cir. 1971), *cert. denied*, 405 U.S. 975 (1972); <u>United States v. Goldman</u>, 439 F.Supp. 337 (S.D.N.Y. 1977). s Judge Weinstein so cogently stated, "[p]recision, accuracy and fairness suffer under a system of 'trial by ambush'" (<u>United States v. Gallo</u>, 654 F.Supp. 463, 480 (E.D.N.Y. 1987)).

We are certainly aware of the list of witnesses who testified at the last trial.  We request that the government nevertheless disclose a list of witnesses other than those who testified at the first trial for the reasons set forth herein.

## POINT SEVEN

## PERMITTING THE DEFENDANT TO FILE ADDITIONAL MOTIONS WHICH MAY ARISE FROM THE REQUESTS MADE HEREIN

Given the nature of the instant motion, the defense respectfully requests he opportunity, if necessary, to file additional motions, based upon the resolution of the issues raised herein.

## POINT EIGHT

## SEVERANCE

The defendant reserves the right to move the Court for a severance at such time that the number of defendants proceeding to trial and the evidence which will be admitted against each separate defendant is determined.  Defendant further requests the right to join in the motions of co-defendants relative to the issue of severance.

## POINT NINE

## MR. HOUGHTON RESPECTFULLY RESERVES THE RIGHT TO MAKE MOTIONS *IN LIMINE* TO EXCLUDE EVIDENCE OFERRED BY THE GOVERNMENT

## **CONCLUSION**

Based upon the foregoing, it is respectfully requested that these Motions be granted in their entirety, and for such other and further relief as this Court may deem necessary and proper in the premises.

Respectfully submitted,

/s/
JAMES KOUSOUROS

## **CERTIFICATE OF SERVICE**

This is to certify that on this 18th day of June, 2008, a true and correct copy of the foregoing was forwarded by overnight mail to all counsel of record in this matter, as follows:

John Zack
Assistant United States Attorney
U.S. Attorney's Office
Southern District of New York
One St. Andrew's Plaza
New York, NY 10007

/s/
JAMES KOUSOUROS, ESQ.
*Attorney for Defendant Ishmael Houghton*

34